United States District Court
Southern District of Texas
**ENTERED**
June 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GREGORY JAMES SHELTON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00051 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Gregory James Shelton is an inmate in the Texas Department of Criminal Justice and is currently incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se*, Shelton filed an original *habeas corpus* petition pursuant to 28 U.S.C. § 2254 on February 8, 2023. (D.E. 1). Liberally construed, Shelton claims that McConnell Unit officials violated his due process rights under the Fifth and Fourteenth Amendments during disciplinary proceedings. Respondent filed a construed motion to dismiss (D.E. 11), to which Shelton has not responded. As discussed below, it is respectfully recommended that Respondent's motion to dismiss (D.E. 11) be **GRANTED** and Shelton's § 2254 petition be **DISMISSED**. It is further recommended that a Certificate of Appealability ("COA") be **DENIED**.

### I. JURISDICTION

Jurisdiction and venue are proper in this court because the prison disciplinary hearing about which Shelton complains occurred at the McConnell Unit in Bee County,

Texas, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. 2241(d); *Wadsworth v. Johnson* , 235 F.3d 959 (5th Cir. 2000).

## II. BACKGROUND

### a. Disciplinary and Grievance Records

Shelton is serving a life sentence after being convicted of murder. (D.E. 11 at 2). Shelton does not complain about his conviction, however, but instead challenges the results of a disciplinary hearing. (D.E. 1 at 6).

On June 29, 2022, Shelton was charged in an offense report with possession of an unauthorized controlled substance. (D.E. 10-1 at 4). The charging officer indicated that he conducted a search of Shelton's cell after smelling the scent of alcohol. (*Id.* at 4-7). During the search, the charging officer discovered an envelope. (*Id.* at 4). The officer opened the envelope and found pages of paper with a yellow, wax-like texture. When tested, the paper returned positive for synthetic cannabinoids or K2. (*Id.*). Throughout the investigation and hearing, Shelton contended that it was normal paper that he received from the Our Lady of Guadalupe Church. (*Id.* at 2-3, 6). Ultimately, Shelton was found guilty, and the Disciplinary Hearing Officer imposed a forty-five-day recreation restriction, forty-six-day commissary restriction, and a reduction in line-class from S3 to S4. (*Id.* at 2). There is no indication in the TDCJ hearing report that Shelton's custody level was changed because of the disciplinary conviction. (*See id.*).

In his Step 1 grievance, Shelton argued that the entire envelope should have been tested. (D.E. 10-1 at 2). Further, Shelton argued the letters could not have tested positive

for synthetic cannabinoids because they were sent from Our Lady of Guadalupe Church. Finally, Shelton stated that the Warden should be present when the pages were tested so it could be verified that the pages being tested were the ones bearing the prison correspondent's name. (*Id.*). The Warden reviewed the grievance and concluded there was sufficient evidence to support the guilty finding. (*Id.* at 3). The Warden also concluded the punishment imposed was within established guidelines. (*Id.*).

In his Step 2 grievance, Shelton explained his dissatisfaction with the response to his Step 1 grievance. (*Id.* at 4). Shelton stated that the previous warden, Warden Sanchez, had been in touch with the Our Lady of Guadalupe Church and that he retested the pages, which did not test positive for synthetic cannabinoids. The current warden, Warden Samaniego, reiterated that the positive tests were valid. In response, the Central Grievance Office concluded that all due process requirements were satisfied, that the guilty verdict was supported by a preponderance of the evidence, and that the punishment imposed was within agency guidelines. (*Id.* at 5).

    **b.   Petition and Claims**

In his petition, Shelton raises two claims, however both raise due process claims regarding his disciplinary conviction and the testing of the pages. (D.E. 1 at 6). First, Shelton argues that the failure to retest the pages found in his cell that tested positive for synthetic cannabinoids constitutes a violation of his constitutional rights to due process. Specifically, he argues the pages were retested by Warden Sanchez, who told Shelton "not to worry about it." However, Warden Sanchez was soon promoted and left his station, and

3

the current Warden did not retest the pages or speak with Sanchez about the issue. Second, Shelton contends that his due process rights were violated because he was not given an independent opportunity to test the pages. (*Id.*). In a subsequent letter to the Court, Shelton asserts that he has a liberty interest that is being harmed by being placed into custody level G4. (D.E. 6-1 at 1; *see also* D.E. 1 at 5). Shelton seeks to have the case taken off his record and to have his previous line-class status restored. (D.E. 1 at 7).

### III. DISCUSSION

In the motion to dismiss, Respondent argues Shelton has failed to state any claims entitling him to federal *habeas corpus* relief. (D.E. 11 at 4). Respondent contends Shelton's loss of privileges and reduction in line class are merely changes in the conditions of confinement that do not implicate the Due Process Clause. (*Id.*). Respondent further argues Shelton cannot demonstrate that his new time-earning classification changed the length of his sentence to the extent that it prohibits entitlement to an accelerated release date. (*Id.* at 6).

Shelton has not responded.

In order to be granted a writ of *habeas corpus*, a petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). The Supreme Court has described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process, and acknowledged that, under certain circumstances, a state may create liberty interests that are protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (first

citing *Wolff v. McDonnell*, 418 U.S. 539 (1975); then citing *Meachum v. Fano*, 427 U.S. 215 (1976)).  However, the liberty interests are generally limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84.

The Court further explained the purposes of punishment of incarcerated prisoners, which include meeting "prison management and prisoner rehabilitative goals." *Id.*  While individuals do not lose all constitutional rights when becoming a prisoner, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quoting *Jones v. North Carolina Prisoner' Lab. Union, Inc.*, 433 U.S. 119, 125 (1977) and *Price v. Johnston*, 334 U.S. 266, 285 (1948)).  In practice, this means "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests. *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

Often, punishment by prison officials can be identified as a change in the prisoner's conditions of confinement.  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).  When determining whether a state-created liberty interest in avoiding restrictive conditions of confinement exists, the Court must look not to the language of the regulations regarding these conditions, but to the nature of the conditions themselves.  *Id.* (citing *Sandin,* 515 U.S. at 483-84).

A liberty interest recognized in Texas is the ability of some prisoners to be released early under a mandatory supervision program after being awarded good conduct time based

5

on their behavior. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing Tex. Code Crim. P. art. 42.18 § 2(2)).[1] The program adds the prisoner's earned good time credits to the days they have actually served. Should that time equal the term to which the inmate was sentenced, the inmate shall be released and placed under supervision. Tex. Gov't Code § 508.147. However, prisoners who commit certain offenses are excluded from eligibility for mandatory supervision. *See* Tex. Gov't Code § 508.149(a) (listing offenses that render an inmate ineligible for release to mandatory supervision). Shelton was convicted of Murder under Tex. Penal Code § 19.02, which is an excluded offense. *Id.* § 508.149(a)(2).

Here, Shelton cannot make out a due process cause of action based on his loss of recreation and commissary privileges, his reduction in line class, or his reduction in custody level. First, as to his loss of recreation and commissary privileges, the loss of these types of privileges does not place an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 472. Courts often do not find that these penalties rise to the level of atypical because they are viewed as a mere change in condition. *See Madison,* 104 F.3d at 768 (concluding thirty-day commissary restriction as a punishment does not implicate due process clause); *see also Knoeppel v. Thaler*, No. SA-10-CV-153-XR, 2010 WL 2179626, at *2 (W.D. Tex. May 25, 2010) (stating loss of forty-five days of recreation and commissary privileges was solely a change in condition of confinement and did not implicate due process concerns).

---

[1] Currently located at Tex. Gov't Code § 508.001(5).

Second, as to Shelton's reduction in line class, a lower classification of line class limits an inmate's ability to earn good time credits, which could influence his eligibility for parole, and in turn, the amount of time he is in custody. However, like the loss of the privileges described above, a reduction in line class does not implicate a liberty interest protected by the Due Process Clause. *Nathan v. Hancock*, 477 Fed.Appx. 197, 198 (5th Cir. 2012). A change of classification's effect on "[the] prisoner's ultimate release date is too speculative." *Id.* at 199. This speculative nature therefore fails "to afford him a constitutionally cognizable claim to the 'right' to a particular time earning status." *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000).

Finally, as to Shelton's claim that his change in custody level violated a liberty interest, the hearing record lacks any indication that such a punishment was imposed. (D.E. 10-1 at 2). Even if such a punishment was imposed, a reduction in custody level does not violate a prisoner's due process rights. *See Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (stating a prisoner generally does not have a liberty interest in their custodial status). Accordingly, Shelton's § 2254 petition should be dismissed.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a *habeas corpus* proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(2). Although Shelton has not yet filed a notice of appeal, the issue of whether he is entitled to a certificate of appealability ("COA") will be addressed.

A COA may be issued only if the prisoner makes a "substantial showing of the denial of a constitutional right." *Id.* A COA inquiry requires an overview of the claims of the *habeas* petition and a general assessment of the merits. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Where a claim is dismissed on a procedural ground, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, because reasonable jurists would not find it debatable that Shelton failed to state a claim for a violation of a constitutional right, it is recommended that a COA be denied.

## V. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion to dismiss (D.E. 11) be **GRANTED** and Shelton's § 2254 petition be **DISMISSED**. In

addition, it is further recommended that any request for a Certificate of Appealability be **DENIED**.

      ORDERED on June 5, 2023.

                                                              _____
                                                                Julie K. Hampton
                                             United States Magistrate Judge

## NOTICE TO PARTIES

      The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

      A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C § 636(b)(1).